## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
ANITRA KNOX                   :    Civ. No. 3:12CV01741(SALM)
                              :
v.                            :
                              :
UNITED STATES                 :    July 27, 2016
                              :
------------------------------x
```

### RULING ON DEFENDANT'S MOTION FOR SANCTIONS [Doc. #94]

Pending before the Court is the motion of defendant the United States ("defendant") for sanctions against plaintiff Anitra Knox ("plaintiff"). [Doc. #94]. Plaintiff, appearing pro se, has filed a "Motion to Continue Proceedings," which the Court construes as plaintiff's response to the Motion for Sanctions. [Doc. #109].[1] Defendant filed a Reply brief on June 28, 2016. [Doc. #112]. For the reasons articulated below, the Court GRANTS, in part, and DENIES, in part, defendant's Motion for Sanctions [Doc. #94].

### I.  Background

On December 12, 2012, plaintiff, through her then-counsel Anthony Lasala, initiated this matter pursuant to the Federal

---

[1] The Court TERMINATES plaintiff's motion [Doc. #109], in light of the Court construing this document as plaintiff's response to the Motion for Sanctions.

Tort Claims Act against the United States. [Doc. #1].[2] Plaintiff alleges that she slipped and fell at the West Haven Veterans Administration Hospital (the "VA"), and as a result, sustained injuries. Id. Specifically, plaintiff alleges that she "suffered and sustained the following injuries and losses ... (a) radial head fracture of the right elbow; (b) injuries to the right wrist, arm, elbow and shoulder; (c) sprain/strain of the lumbar spine; (d) sprain/strain of the cervical spine; (e) injuries to the right knee; [and] injuries to the contiguous muscles, ligaments, nerves, soft tissues, glands, bones and joints of the injured parts." [Doc. #1, at ¶11]. On February 28, 2013, defendant appeared and filed its Answer to the Complaint. [Doc. ##7, 8]. The parties filed their Rule 26(f) Report on July 3, 2013. [Doc. #13]. Thereafter, the parties engaged in discovery and settlement discussions through December 2015. The parties consented to the jurisdiction of a United States Magistrate Judge on January 15, 2016. [Doc. #50]. On February 1, 2016, this matter was transferred to the undersigned. [Doc. #52]. Neither party has filed dispositive motions.

In response to this Court's final pretrial order [Doc. #55], on March 1, 2016, the parties filed their Joint Trial

---

[2] Attorney William B. Wynne filed an appearance on behalf of plaintiff on May 6, 2015. [Doc. #35]. As will be discussed further below, on May 19, 2016, the Court granted Attorney Lasala and Attorney Wynne's Motions to withdraw as counsel. [Doc. #100].

Memorandum. [Doc. #57]. Defendant also filed a motion in limine, which sought to preclude plaintiff's late-disclosed expert witness, Dr. Jonathan Grauer, M.D., from testifying at trial [Doc. #58]. On March 30, 2016, the Court granted this motion, absent objection, and precluded Dr. Grauer from testifying in an expert capacity, but not as a fact witness. [Doc. #64].[3] Shortly after issuing this Ruling, the Court scheduled a telephonic conference for April 20, 2016, to address the appropriate parameters of Dr. Grauer's trial testimony as a fact witness. [Doc. #65].

During this telephonic conference, on April 20, 2016, counsel for plaintiff, Anthony Lasala informed the Court that on April 18, 2016, plaintiff had contacted him and Attorney Wynne in writing and terminated their services as her counsel. [Doc. #68]. In light of this development, the Court scheduled an in-person hearing for April 25, 2016, to address plaintiff's termination of her counsel's services and her plans for proceeding with trial. [Doc. ##68, 69]. The Court required plaintiff's personal appearance at this hearing. Id.

On April 21, 2016, defendant filed a "Report to the Court" regarding plaintiff's proffered witness, Dr. Grauer, and newly discovered evidence which purportedly impacted the extent of Dr.

---

[3] Prior to granting the motion in limine, the Court scheduled a bench trial to occur on May 12 and 13, 2016. [Doc. #63].

Grauer's testimony (hereinafter the "Report"). [Doc. #79].[4] In this Report, defendant represents that it "recently discovered a prior lawsuit the plaintiff was involved which establishes that the plaintiff suffered from prior injuries to her back." Id. at 3 (sic). Defendant continues: "This lawsuit as well as the plaintiff's prior back injuries were never disclosed to the defendant. Moreover the plaintiff denied, under oath during her deposition, that she had filed a prior lawsuit or suffered prior back injuries and the plaintiff's prior back injuries and accidents were not disclosed to her treating physicians, the most important being Dr. Grauer." [Doc. #79 at 3]. In light of this information, defendant contended that Dr. Grauer's testimony, even as a fact witness, was unreliable, and that, as will be discussed further below, plaintiff would be unable to sustain her burden of proving damages.

Also on April 21, 2016, plaintiff filed a Motion for Permission to attend the April 25, 2016, hearing by video conference. [Doc. #76]. The Court scheduled a telephone conference for April 22, 2016, to address this motion and required both plaintiff and her counsel participate in this

---

[4] In anticipation of the April 20, 2016, telephonic status conference, defendant initially hand-delivered a copy of this Report to the undersigned's chambers on April 19, 2016. During the April 20, 2016, status conference, the Court ordered defendant to file this document on the public docket. See Doc. #70.

telephonic conference. [Doc. #78]. During this conference, plaintiff orally sought a six month continuance of the May 12 and 13, 2016, trial dates. [Doc. #83]. The Court granted this motion, in part, and rescheduled the bench trial to August 9 and 10, 2016. [Doc. ##84, 85]. At this time, the Court also addressed the then-pending motions filed by Attorneys Lasala and Wynne, and set a deadline of May 13, 2016, for plaintiff's replacement counsel, or plaintiff appearing pro se, to file an appearance. [Doc. #85]. The Court directed defendant to file any motions relating to matters raised in its April 21, 2016, Report no later than May 20, 2015. [Doc. #85]. Plaintiff filed her pro se appearance on May 12, 2016. [Doc. #93]. On that same date, defendant filed the motion for sanctions now at issue. [Doc. #94].

Plaintiff's pro se appearance was improperly faxed to the District of Connecticut Clerk's office and filed on a State Superior Court form. See Doc. #93. Accordingly, the Court entered an Order directing plaintiff to re-file her appearance on the proper form, a copy of which was provided in the docket. [Doc. #95]. The Court further required plaintiff to participate in electronic filing, and provided for her completion a Consent to Electronic Notice by Pro Se Litigant. Id. The Court scheduled yet another telephonic conference for May 19, 2016, to address plaintiff's pro se appearance in this matter. [Doc. ##95, 96].

During the May 19, 2016, telephonic status conference, the
Court granted the Motions to Withdraw previously filed by
Attorneys Lasala and Wynne. [Doc. ##96, 100]. The Court
additionally entered a scheduling order requiring any amendments
to the Joint Trial Memorandum, in light of the newly discovered
evidence, to be filed on or before the close of business on June
30, 2016. [Doc. #98]. During this conference, the Court also
advised plaintiff that her response to defendant's motion for
sanctions was due on or before June 2, 2016. Plaintiff expressed
her understanding.

On May 24, 2016, plaintiff re-filed her Notice of Pro Se
Appearance, as well as a Motion to Participate in Electronic
Filing, and Consent to Electronic Notice. [Doc. ##101, 102,
103]. The Court granted plaintiff's Motion to Participate in
Electronic Filing on May 25, 2016. [Doc. #104]. The Clerk's
Office provided plaintiff with the materials and hyperlinks
necessary to complete the online PACER training program, the
completion of which was a prerequisite to plaintiff receiving an
ECF login and password. See Doc. #106. On June 10, 2016, the
Court entered an order requiring plaintiff to notify the Clerk's
office that she had completed the PACER training so that she
could receive an ECF login and password. Id. The Court also
entered an Order requiring plaintiff to file her response to
defendant's motion for sanctions forthwith, or risk having the

6

Court grant the motion, in whole or in part, absent objection. [Doc. #107]. The Clerk's office provided plaintiff with her ECF login and password on June 13, 2016. [Doc. #108]. The Court, having received no response to the motion for sanctions, entered a second order providing plaintiff with a final opportunity to oppose the motion for sanctions, and set a June 15, 2016, response deadline. Id.

In accordance with this Order, on June 15, 2016, plaintiff filed her Motion to Continue Proceedings, which the Court construes as her response to the pending motion for sanctions. [Doc. #109]. The motion for sanctions seeks dismissal of this matter, with prejudice. [Doc. #94]. Alternatively, defendant requests that the Court preclude plaintiff from introducing any evidence of her alleged back injury. Id. The Court will further address the contentions of the parties below.

## II. Discussion

Defendant seeks to impose sanctions under two different theories: under the Court's inherent authority, and under Rule 37 of the Federal Rules of Civil Procedure. The basis for defendant's request is that counsel for defendant "discovered new evidence that greatly impacted Dr. Grauer's testimony as

well as the overall merits of this lawsuit." [Doc. #94-1 at 4].[5]
"During the final preparation for the plaintiff's cross
examination for trial," defense counsel discovered a summary
judgment ruling issued by District Judge Robert N. Chatigny, in
a case where plaintiff claimed she was denied a position as a
City of New Haven firefighter as a result of gender and race
discrimination. [Doc. #94-1 at 8]; see also Knox v. New Haven,
357 F. Supp. 2d 449 (D. Conn. 2005).[6] Judge Chatigny found the
following facts established for purposes of summary judgment:
"Plaintiff was examined on February 25, 2002. In connection with
the examination, she reported that she had injured her back in
1993 and again in 2000, and that she was currently having back
pain due to a bulging disc sustained in a car accident." Id. at
450. (internal citation to record omitted). Defendant represents
that these prior back injuries are in the same location where
plaintiff claims to have injured herself in the present matter.
[Doc. #94-1]. The record supports this representation. Compare,
e.g., Doc. #94-6 (August 30, 2015, Dr. Grauer report noting,
inter alia: "no documentation of preexisting condition";
degenerative changes and disc herniation at L5-S1 of plaintiff's
lumbar spine; and that "[b]y histories provided and records

---

[5] Dr. Grauer is plaintiff's disclosed expert on the subject of
her alleged back injuries. The Court has precluded Dr. Grauer
from testifying in an expert capacity. See Doc. #64.

[6] Docketed in this District under case number 3:03CV01408(RNC).

reviewed, the onset of symptoms are temporally linked to the injury in question [*i.e.*, the slip and fall at the VA]"), with Doc. #80-1 at 2, 6 (plaintiff's medical records noting that she sustained a herniated disc in L5 as a result of the 1993 car accident). Compare, e.g., Doc. #1 at ¶11(d) (Complaint alleging plaintiff sustained a "sprain/strain of the cervical spine" as a result of the slip and fall at the VA), with Doc. #80-1 at 7 (plaintiff's medical records noting assessment of "Cervical Sprain Strain" as result of 2001 car accident). Accordingly, because plaintiff's prior back injuries and prior lawsuit were never disclosed, defendant now seeks the imposition of sanctions, including dismissal. The Court turns first to whether sanctions are warranted under the Court's inherent authority.

A. **Sanctions Under the Court's Inherent Authority**

In addition to seeking sanctions under Rule 37, defendant, although not specifically referring to it as such, also seeks to invoke the inherent authority of the Court to impose sanctions on the theory that plaintiff has perpetrated a "fraud on the Court[.]" [Doc. #94-1 at 14]. See Jung v. Neschis, No. 01CV6993(RMB)(THK), 2009 WL 762835, at *13 (S.D.N.Y. Mar. 23, 2009) ("In the instant situation, where Defendants contend that Plaintiffs have committed fraud on the court by fabricating evidence and making misrepresentations to the Court, it is the

Court's inherent authority that provides the primary basis on which to act.").

### 1. Legal Standard

The "Court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." Shangold v. Walt Disney Co., No. 03CV9522(WHP), 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)). "Sanctions for fraud are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc., 432 F. App'x 25 (2d Cir. 2011) (citation and internal quotation marks omitted) (alteration modified); see also Almeciga v. Ctr. for Investigative Reporting, Inc., No. 15CV4319(JSR), 2016 WL 2621131, at *17 (S.D.N.Y. May 6, 2016) ("[A]s a general matter, a court should not impose sanctions on a party or attorney pursuant to its inherent authority unless it finds, by clear and convincing evidence, that the party or attorney knowingly

submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly." (citation omitted)).

"The essence of fraud on the court is when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." Cent. N.Y. Laborers' Health & Welfare Fund v. Fahs Constr. Grp., Inc., No. 5:13CV226, 2016 WL 1106445, at *4 (N.D.N.Y. Mar. 21, 2016) (citation and internal quotation marks omitted). "[T]he concept [of fraud upon the court] should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972) (citation and internal quotation marks omitted) (alterations added).

### 2. Analysis

Defendant contends that plaintiff perpetrated a fraud on the court by: (1) providing false testimony at her deposition; (2) failing to disclose her prior back injury throughout the course of this litigation, including discovery; and (3) making

false representations about her injuries to United States

Magistrate Judge Donna F. Martinez during a settlement

conference.[7] [Doc. #94-1 at 21-23]. Plaintiff responds:

> I did not willfully or intentionally answer. I forgot
> about a 20-year old diagnosis that has not inhibited
> any part of my life[.] I thought the question to be in
> direct relation to the VA and injuries sustained
> there.

[Doc. #109 at 1]. Plaintiff continues:

> Discovery abuse was unaware and unintentional by
> plaintiff. Not disclosed by plaintiff's own previous
> counsel still to date, discovered by defendant. ...
> Accurate, honest testimony given by plaintiff of what
> was believed to be in reference only to this case and
> issues of back injury or lawsuits filed. Previous
> counsel never corrected or informed plaintiff,
> questioning was generalized, not case or back injury
> specific as she believed.

[Doc. #109-1 at 1 (sic)]. In reply, and for substantially the

same reasons set forth in their motion for sanctions, defendant

contends that plaintiff's arguments are without merit. See

generally Doc. #112. For the reasons articulated below, the

Court declines to dismiss this case under its inherent

authority.

"Our judicial system generally relies on litigants to tell

the truth and participate in discovery in good faith." McMunn v.

Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445

---

[7] Defendant does not develop the argument that plaintiff made
false representations about her injuries to Judge Martinez
during the course of settlement negotiations. Although a serious
accusation, because defendant does not develop this argument,
the Court does not consider it here.

(S.D.N.Y. 2002) (collecting cases). "Thus, when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his right to have his claim decided on the merits." Id. Here, although the Court has concerns regarding the conduct of plaintiff and her former attorneys, the record fails to reflect the "clear and convincing evidence" necessary to support the dismissal of this matter, with prejudice, under the Court's inherent authority.[8]

As an initial matter, defendant alleges only one instance of perjury committed by plaintiff. "Perjury 'is false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" Radecki v. GlaxoSmithKline, 646 F. Supp. 2d 310, 315 (D. Conn. 2009) (quoting U.S. v. Dunnigan, 507 U.S. 87, 94 (1993)), aff'd, 375 F. App'x 46 (2d Cir. 2010). Plaintiff, now pro se, represents that her deposition testimony was not made with the willful intent to provide false testimony, but rather a result of impaired memory and confusion. See generally Doc. #109 at 1; 109-1 at 1. Defendant responds that plaintiff's

---

[8] In that regard, the Court declines to hold an evidentiary hearing for such purposes, as it does not have reason to believe that relevant evidence would be presented that would serve to further clarify the issues before the Court.

deposition transcript demonstrates plaintiff understood the questions posed to her. [Doc. #112 at 7].

Upon review of plaintiff's deposition transcript, the Court is hard pressed to discern how plaintiff was confused by the line of questioning posed by defense counsel with respect to her prior injuries. For example, following defense counsel's inquiry into plaintiff's Achilles injury, the following exchange occurred:

> Q:   No other accidents? No other falls, car accidents?
>
> A:   No.
>
> Q:   No other –
>
> A:   I'm not usually accident prone or injured.
>
> ...
>
> Q:   So, no other injuries?
>
> A:   No. I had the Achilles and – I'm usually pretty
>       healthy.

[Doc. #94-3, Sept. 4, 2014, Depo. of Anitra Knox, 34:13-19; 35:1-3].[9] Defense counsel's questioning was not limited to plaintiff's Achilles injury. Nor can it be implied, as contended

---

[9] Plaintiff was represented by counsel during her deposition. Notably, counsel for plaintiff did not seek to clarify plaintiff's testimony, or otherwise request a break in order to possibly refresh her memory concerning the prior incidents at issue. Allegedly, and although plaintiff's counsel represented her in connection with at least one of these accidents, plaintiff's counsel did not disclose the prior injuries and lawsuit until shortly before plaintiff terminated their services on April 18, 2016, when counsel for defendant independently discovered the prior suit.

by plaintiff, that the questioning was related to the injuries she allegedly sustained "in direct relation to the VA[.]" [Doc. #109 at 1]. Indeed, the record before the Court indicates that plaintiff was involved in at least two car accidents, see Doc. #94-2 at 3; #94-5; #80-1, and that she failed to disclose these during her deposition. Notwithstanding the foregoing, the Court is cognizant that plaintiff's deposition occurred on September 4, 2014, over twenty years after her 1993 accident and related injuries, and thirteen years after her 2001 accident and related injuries. [Doc. #94-3]. This gap in time could reasonably, in the Court's estimation, cause an individual to overlook certain events, particularly where, as plaintiff contends, such injuries had "not inhibited any part of [her] life[.]" [Doc. #109 at 1]. Accordingly, on the current record, the Court finds that plaintiff's testimony, in light of the time elapsed between her injuries and her deposition, could have reasonably resulted from plaintiff's lapse in memory.[10]

With respect to whether plaintiff had filed any previous lawsuits, however, the Court's review of plaintiff's deposition

---

[10] The fact that plaintiff failed to disclose these prior injuries to her treating physician could further support a finding that plaintiff suffered from a faulty memory in this respect. Of course, defendant would argue that plaintiff tried to mislead both her doctor and the Court by omitting such information, but the reasonable response to this is that plaintiff simply forgot. Other documents in the record, filed under seal, further support this conclusion. See Doc. #89.

transcript is not as clear. Following defense counsel's inquiry into plaintiff's prior injuries recited above, defense counsel asked: "And no other lawsuits?" [Doc. #94-3, Sept. 4, 2014, Depo. of Anitra Knox, 35:4]. To which plaintiff responded: "I haven't filed another lawsuit, no." [Id. at 35:5]. Reading the deposition transcript the Court finds that plaintiff reasonably could have interpreted this question to relate to other lawsuits with respect to the injuries she allegedly sustained at the VA. Plaintiff did not testify that she had not filed "other lawsuits" or "any other lawsuit," she testified that she had not filed "another lawsuit," which the Court construes as plaintiff testifying that she had not filed another lawsuit related to that now pending. If anything, plaintiff's response warranted additional follow-up or clarification by defense counsel. Accordingly, clear and convincing evidence does not support a finding that plaintiff committed perjury on this matter.

Even assuming plaintiff did commit perjury, as that term is defined above, that would not lead the Court to dismiss her case. "It is well-settled ... that an isolated instance of perjury, standing alone, will not constitute a fraud upon the court." McMunn, 191 F. Supp. 2d at 445 (citing Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988)). Although defendant submits that plaintiff's failure to disclose her prior lawsuit and injuries compounds the circumstances under which she

testified, the Court is still without the clear and convincing evidence necessary to support a finding that plaintiff perpetrated a fraud upon the Court. It is concerning that defendant never received this information in discovery; however, defendant has failed to provide the Court with any evidence that it ever affirmatively requested the information. Such information might have been produced in plaintiff's initial disclosures,[11] but given that it apparently was not, defense counsel could have posed an interrogatory or request for production concerning any prior lawsuits or injuries to reasonably assure that all relevant information had been disclosed. There is nothing in the record to suggest counsel did so.

"[D]ismissal is a 'harsh remedy, not to be utilized without a careful weighing of its appropriateness ... [and] one of the factors that should inform a trial court's decision is the

---

[11] Under Rule 26(a), information concerning plaintiff's prior injuries should have been turned over as part of her Rule 26 initial disclosures. That section provides: "Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: ... (iii) a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added). Plaintiff's medical records relating to prior injuries bear on the extent of injuries plaintiff claims to have suffered as a result of the slip and fall at the VA.

suitability of lesser sanctions.'" DAG Jewish Directories, Inc.
v. Y & R Media, LLC, No. 09CV7802(RJH), 2010 WL 3219292, at *3
(S.D.N.Y. Aug. 12, 2010) (quoting Dodson v. Runyon, 86 F.3d 37,
39 (2d Cir. 1996)). Here, the Court does not find that dismissal
of plaintiff's case, with prejudice, is warranted under the
Court's inherent authority, particularly in light of other
available sanctions under Rule 37 of the Federal Rules of Civil
Procedure. See Chambers, 501 U.S. at 50 ("[W]hen there is bad-
faith conduct in the course of litigation that could be
adequately sanctioned under the Rules, the court ordinarily
should rely on the Rules rather than the inherent power. But if
in the informed discretion of the court, neither the statute nor
the Rules are up to the task, the court may safely rely on its
inherent power.").

**B. <u>Sanctions Under Rule 37</u>**

The Court next turns to defendant's request pursuant to
Rule 37(b)(2)(A) for the imposition of sanctions. Defendant
appears to seek sanctions pursuant to Rule 37(b), which provides
that the Court may sanction a party for failing to obey an <u>order</u>
to provide or permit discovery. See Doc. #94-1 at 8. However,
the claim here is not that plaintiff failed to obey a discovery
order, but rather that she completely failed to disclose
information relating to her prior back injury and lawsuits.
Accordingly, it would appear that defendant's request for

18

sanctions would fall under the purview of Rule 37(c), which permits a court, in its discretion, to impose those sanctions listed in Federal Rule of Civil Procedure 37(b)(2)(A), for violations of Rule 26(a).

### 1. Legal Standard

Rule 37(c)(1) describes the available remedies when a party fails to provide information pursuant to Rule 26(a) or (e):

> If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: ... may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)(C). Rule 26(a) governs, amongst other required disclosures, the parties' mandatory initial disclosures. Pertinent to the discussion below, Rule 26(a)(1)(A)(iii) requires disclosure of:

> a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii). This information is to be provided "without awaiting a discovery request[.]" Fed. R. Civ. P. 26(a)(1)(A). Further, "[a] party must make its initial disclosures based on the information then reasonably available

to it. A party is not excused from making its disclosures because it has not fully investigated the case[.]" Fed. R. Civ. P. 26(a)(1)(E).

"The party requesting sanctions under Rule 37 bears the burden of showing that the opposing party failed to timely disclose [the] information" sought. Vineyard Vines, LLC v. Macbeth Collection, LLC, No. 3:14CV1096(JCH), 2015 WL 2179775, at *1 (D. Conn. May 8, 2015); see also Lodge v. United Homes, LLC, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011). "To meet this burden the party must establish (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2007)).

"The imposition of sanctions under Rule 37(c)(1) is a matter within the trial court's discretion. Moreover, refusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules." Johnson Elec. N. Am. Inc. v. Mabuchi

Motor Am. Corp., 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999)
(internal citations omitted); see also Agiwal v. Mid Island
Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (A district
court's imposition of sanctions under Rule 37, including
dismissal, is reviewed for an abuse of discretion.).
Nevertheless, "[d]espite the mandatory language of Rule
37(c)(1), the Second Circuit has held that preclusion is a
discretionary remedy, even if 'the trial court finds that there
is no substantial justification and the failure to disclose is
not harmless.'" Nosal v. Granite Park LLC, 269 F.R.D. 284, 289
(S.D.N.Y. 2010) (quoting Design Strategy, Inc. v. Davis, 469
F.3d 584, 297 (2d Cir. 2006)).

Sanctions under Rule 37 are designed to effectuate three
goals: "First, they ensure that a party will not benefit from
its own failure to comply. Second, they are specific deterrents
and seek to obtain compliance with the particular order issued.
Third, they are intended to serve a general deterrent effect on
the case at hand and on other litigation, provided that the
party against whom they are imposed is in some sense at fault."
Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir.
1988).

**2. Analysis**

Here, plaintiff, by the acts of her former counsel,[12] has failed to comply with the initial disclosure requirements of Rule 26(a) by not disclosing her prior back injuries, which "bear[] on the nature and extent of injuries suffered" when she slipped and fell at the VA. Plaintiff presumably had control over this information,[13] and was obligated to produce it pursuant to Rule 26(a). Plaintiff failed to do so. She also failed to disclose the prior injuries at her deposition. As a result, defendant requests that the Court dismiss plaintiff's complaint in its entirety, or alternatively, preclude any evidence of plaintiff's back injury.

Having found that plaintiff failed to meet her obligations under Rule 26(a), the Court turns next to whether plaintiff had a culpable state of mind. The Eastern District of New York has comprehensively discussed this element:

---

[12] "[L]itigants are generally bound by the professional conduct of the attorneys they choose to represent them, although the conduct of counsel may give rise to a claim for malpractice by the client." Davidowitz v. Patridge, No. 08CV6962 (NRB), 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010) (citation and internal quotation marks omitted); see also McMunn, 191 F. Supp. 2d at 452 (a party "is held accountable for the acts or omissions of her freely-chosen attorney[]" (citing Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962))).

[13] Indeed, attached to plaintiff's response to the motion for sanctions are medical records relating to plaintiff's 2001 accident and injury. See Doc. ##109-3, 109-4.

> The culpable state of mind element is satisfied by a showing that a party has breached a discovery obligation through bad faith or gross negligence or ordinary negligence. Failures to produce relevant evidence occur along a continuum of fault - ranging from innocence through the degrees of negligence to intentionality, and courts must therefore take a case-by-case approach in determining the level of culpability. In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding. A party is negligent even if the failure results from a pure heart and an empty head.

Markey v. Lapolla Indus., Inc., No. 12CV4622(JS)(AKT), 2015 WL 5027522, at *17 (E.D.N.Y. Aug. 25, 2015) (internal citations and quotation marks omitted), report and recommendation adopted, No. 12CV4622(JS)(AKT), 2016 WL 324968 (Jan. 26, 2016). The Court cannot conclusively state that the failure to disclose plaintiff's prior back injuries was the result of bad faith. However, the failure to disclose appears to at least satisfy the definition of negligence, as explicated by the Markey court. See id. This conclusion is further supported by the fact that plaintiff's former counsel, Attorney Lasala and Attorney Wynne, represented her in connection with the May 16, 2001, car accident that resulted in injuries to her back. See Doc. #80-1 at 14, 15, 16 (medical records relating to plaintiff's May 16, 2001 car accident, bearing: "Cc: Attorney Anthony Lasala"); Doc. #109-1 (Exhibit 1 to plaintiff's response: "Car accident of May 2001, in which the plaintiff was represented by previous counsel

of William Wynn and Tony LaSala[.]" (sic)). Moreover, "[t]he fact that counsel may have engaged in discovery in good faith does not, however, absolve its culpable conduct because the relevant state of mind for sanctions under Rule 37(c) is ordinary negligence, not intentional conduct." Markey, 2015 WL 5027522, at *22 (citation and internal quotation marks omitted). With respect to plaintiff's 1993 car accident and prior federal lawsuit, defense counsel represents that plaintiff's former counsel did not learn of this until fairly recently.[14] However, this "purported ignorance only serves to highlight [counsel's] failure to perform [their] obligations with the necessary diligence required under Rule 26(g)(1)'s 'reasonable inquiry' requirement." Id. Accordingly, the Court finds that the second element supporting an award of Rule 37 sanctions has been satisfied.

Turning to the final element of relevance, "the standard of proof depends on the level of culpability." Id. at *17. Giving plaintiff the benefit of the doubt that counsel was merely

---

[14] Defendant represents:  "Counsel for the plaintiff, Attorney Anthony Lasala admitted that he recently heard about the lawsuit the plaintiff filed against the City of New Haven, after being told about it by his co-counsel Attorney William Wynne, but that he never read the decision and was therefore not aware of the plaintiff's prior back injuries. Although Attorney Wynne 'discovered' the prior lawsuit, neither counsel notified counsel for the defendant or this Court of the decision which established plaintiff's prior back injuries." [Doc. #94-1 at 10].

negligent, "[w]here the breach of discovery obligations was merely negligent, the term 'relevant' in the context of Rule 37 means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. That is, the evidence must be such that a reasonable trier of fact could find that it would support that claim or defense." Markey, 2015 WL 5027522, at *17 (internal citations and quotation marks omitted) (footnote omitted). Here the undisclosed evidence of plaintiff's prior back injuries is directly relevant to plaintiff's claims of injuries sustained as a result of a slip and fall at the VA. As discussed above, the record reflects that plaintiff's prior injuries affected the same area of the back where plaintiff now claims to be injured. Such evidence would thus support a defense that plaintiff's injuries were not proximately caused by the slip and fall at the VA. See Doc. #8 at 3-4. It also bears on the nature and extent of injuries allegedly suffered by plaintiff as a result of the slip and fall. Accordingly, the Court finds that the third element of relevance has also been satisfied.

Finding that defendant has met its burden to support the imposition of Rule 37 sanctions, the Court now turns to whether plaintiff's failure to comply was "substantially justified" or "harmless." See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 158-59

(S.D.N.Y. 2012) ("Even where there is violation of Rule 26(a) or
(e), courts may not impose sanctions under Rule 37(c)(1) where a
party's failure to comply was 'substantially justified' or where
the conduct was 'harmless.'" (citing Fed. R. Civ. P. 37(c)(1))).
Plaintiff bears the burden of proving that her non-compliance
was substantially justified and harmless. See id. at 159.

"Substantial justification may be demonstrated where there
is justification to a degree that could satisfy a reasonable
person that parties could differ as to whether the party was
required to comply with the disclosure [requirement], or if
there exists a genuine dispute concerning compliance." Id.
(citation and internal quotation marks omitted). Here, plaintiff
has failed to proffer circumstances amounting to substantial
justification. Plaintiff contends that her previous counsel
"improperly, inadequately and ineffectively represented [her]"
and that "[d]iscovery abuse was unaware and unintentional by
plaintiff." [Doc. #109-1]. Despite plaintiff's misgivings
regarding her former counsel, this argument is unavailing.
"Absent extraordinary circumstances, a client assumes the risk
of his attorney's actions and is bound even by the consequences
of his attorney's negligence." Bruce Lee Enters., LLC v.
A.V.E.L.A., Inc., No. 10CV2333(KMW), 2013 WL 364210, at *2
(S.D.N.Y. Jan. 30, 2013) (citation omitted). Plaintiff has
failed to present extraordinary circumstances, such as fraud or

some other outrageous intentional act, which would serve to excuse plaintiff from her former counsel's actions. See, e.g., Mpala v. Funaro, No. 3:13CV00252(SALM), 2015 WL 7312427, at *6 (D. Conn. Nov. 19, 2015), reconsideration denied, No. 3:13CV00252(SALM), 2016 WL 74391 (Jan. 6, 2016), appeal docketed, No. 16-62 (2d Cir. Jan. 8, 2016); Lastra v. Weil, Gotshal & Manges LLP, No. 03CV8756(RJH)(RLE), 2005 WL 551996, at *4 (S.D.N.Y. Mar. 8, 2005) ("Claims by a litigant that he should be excused from his attorney's actions because of alleged fraudulent conduct and disobeyance of the litigant's orders may give rise to a claim for malpractice, but does not constitute an extraordinary circumstance or excusable neglect.").[15]

Plaintiff has also failed to demonstrate how the non-disclosure of this information was harmless. "Harmlessness means an absence of prejudice to the defendant." Ritchie Risk, 280 F.R.D. at 159 (citation omitted). Plaintiff cannot submit, and does not appear to argue, that the failure to disclose the

---

[15] The Court notes that the shift of plaintiff's status to pro se litigant confers some benefits. For example, the Court now interprets her briefing "liberally" and reads her filings "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citing Mikinberg v. Baltic S.S. Co., 988 F.2d 327, 330 (2d Cir. 1993)). Additionally, it appears that a dispute over the very issue now before the Court contributed to the plaintiff's dismissal of her prior counsel, which ostensibly could be construed as supporting her argument that the fault lies with counsel. Nevertheless, plaintiff has failed to present the extraordinary circumstances which would excuse her from her prior counsel's actions.

information at issue did not prejudice defendant. Defendant has litigated this case over the course of nearly four years without the benefit of plaintiff's prior medical records. The defendant has now deposed plaintiff and has not been able to inquire about the nature of these prior injuries. Defendant's expert also did not have the benefit of this information which likely would have impacted his opinion. Even plaintiff's proffered expert was not provided this information, thereby likely affecting his anticipated testimony as well. Although defendant has now been provided an opportunity for its expert to submit an addendum to his report to account for this new information, defendant still suffers prejudice in that it will potentially be forced to bear the costs for the preparation of the addendum.[16] It will also be prejudiced in that it will have to bear the costs of taking a deposition of plaintiff's witness, Dr. Grauer.[17] In sum,

---

[16] The Court uses the term "potentially" in light of its proposed sanctions, discussed, infra.

[17] On July 22, 2016, the Court held a telephonic status conference to address plaintiff's proposed amendments to the Joint Trial Memorandum. [Doc. ##117, 122, 123]. During this conference, the Court informed defendant of its intention to deny the motion for sanctions to the extent it sought dismissal and/or preclusion of evidence relating to plaintiff's back injury. [Doc. #123 at 2 n.1]. As such, the defendant orally moved for leave to permit its expert, Dr. Skolnick, to amend his expert report in light of the new information. [Doc. #121]. The Court granted this motion and stated that it would allow Dr. Skolnick to provide an addendum to his original report in light of the circumstances. [Doc. ##122, 123 at 2 n.1]. Defendant also orally moved to depose Dr. Grauer in light of this same information and the

defendant was not provided a fair opportunity to prepare its defense without the benefit of the information it inadvertently discovered while preparing for trial. Accordingly, the Court finds that plaintiff has not satisfied her burden of demonstrating that the non-disclosure was substantially justified or harmless.[18]

Therefore, the Court finds that Sanctions under Rule 37 are warranted under the circumstances of this case. The Court next turns to whether dismissal of plaintiff's complaint is an appropriate sanction.

### a. Dismissal

In considering whether to enter the sanction of dismissal for non-compliance with discovery, the Court considers the following factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been

_____

Court's intention to proceed with the case. [Doc. #119]. The Court granted this motion on the record and encouraged defendant to use its best efforts to complete this deposition before the August trial date. [Doc. ##122, 123 at 2-3 n.1].

[18] To the extent plaintiff's response could be construed as arguing that because her prior injuries left her with no impairment(s), and therefore the failure to disclose is harmless, the Court finds this argument without merit. Regardless of how plaintiff describes her prior injuries, the fact remains that the medical evidence of record in fact shows that plaintiff suffered prior injuries to her back, which are relevant to the issues and damages in this case.

warned of the consequences of noncompliance." <u>Agiwal</u>, 555 F.3d at 302-03 (citation and internal quotation marks omitted); <u>c.f.</u> <u>Hinterberger v. Catholic Health Sys., Inc.</u>, 284 F.R.D. 94, 105 (W.D.N.Y. 2012) (discussing dismissal in the context of Rule 37(c)). The Court further bears in mind that dismissal is an "extreme sanction[], to be deployed only in rare situations." <u>Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp.</u>, 602 F.2d 1062, 1063 (2d Cir. 1979).

With respect to the first factor, willfulness or the reason for noncompliance, there is nothing before the Court to suggest that the failure to disclose plaintiff's prior lawsuit and/or injuries was willful. Rather, as noted above, such noncompliance appears to have been the result of plaintiff's former counsel's negligence. The only reasons proffered to the Court for this failure are plaintiff's contentions that previous counsel "improperly, inadequately and ineffectively represented [her]" and that "[d]iscovery abuse was unaware and unintentional by plaintiff." [Doc. #109-1]. "Dismissal is appropriate only where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." <u>Nieves v. City of New York</u>, 208 F.R.D. 531, 537 (S.D.N.Y. 2002) (collecting cases). Accordingly, because the record does not support a finding of willfulness or bad faith, this factor does not weigh in favor of dismissal.

The Court next considers the duration of plaintiff's noncompliance, which has been lengthy. Plaintiff has essentially been noncompliant with her initial disclosure requirements since August 1, 2013, the date on which her initial disclosure requirements were due. See Doc. #13 at ¶V.E.1. (Rule 26(f) Report: "The parties should be allowed until August 1, 2013 to produce Initial Disclosures mandated by Fed. R. Civ. P. 26(a)."); Doc. #15 (Case Management Order: "The parties will make the disclosures required by Fed. R. Civ. P. 26(a)(1) on or before August 1, 2013."). This non-compliance continues to endure; there is no indication plaintiff has supplemented her initial disclosures, meaning that plaintiff's non-compliance has lasted nearly three years. In fact, if not for defendant conducting its own investigation, this information might never never been discovered. This is hardly insignificant. Accordingly, the Court considers this factor to weigh in favor of dismissal. See Paine, Webber v. Inmobiliaria Melia de P.R., Inc., 543 F.2d 3, 6 (2d Cir. 1976) (finding sanction of default judgment appropriate where party "willfully failed to appear for his deposition for more than seven months").

Next, the Court considers whether plaintiff had been warned of the consequences for non-compliance. This presents a thorny issue as there was no reason to believe plaintiff had been non-compliant with her initial disclosure requirements until

defendant filed its Notice regarding newly discovered evidence. [Doc. #79]. Although the Court has warned plaintiff in other contexts that failure to comply with the Court's orders could result in dismissal of her case, there has yet to issue a formal warning that failure to comply with her discovery/initial disclosure requirements would yield the same result. Accordingly, this factor weighs against the sanction of dismissal. See Hinterberger, 284 F.R.D. at 105 ("[D]ismissal of an action as a sanction generally is not imposed absent the giving of a warning that noncompliance may result in dismissal." (citing Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir. 1994))).

Although a finding of prejudice is not required for the imposition of Rule 37 sanctions, Aliki Foods, LLC v. Otter Valley Foods, Inc., 726 F. Supp. 2d 159, 178 (D. Conn. 2010), the Court finds that defendant has been prejudiced by plaintiff's non-compliance. Failure to disclose plaintiff's prior lawsuit and related injuries impacted the course of discovery in this matter. It also impacted the reports of both proposed experts, to whom plaintiff's prior injuries were never disclosed. Defendant will now have to potentially bear the costs for the preparation of Dr. Skolnick's addendum, and the costs of Dr. Grauer's deposition. Plaintiff's non-compliance also might have impacted defendant's decision not to file a summary

judgment motion. Plaintiff's non-compliance essentially tainted the entire discovery process leading to this point.

The law of this Circuit requires that the Court consider the efficacy of lesser sanctions to effectuate the goals of Rule 37. See Morales v. Cancun Charlie's Rest., No. 3:07CV1836(CFD), 2009 WL 3682449, at *6 (D. Conn. Oct. 30, 2009). Here, the factors considered by the Court above, and the availability of lesser sanctions, tip the scales against dismissal. The Court therefore finds, as discussed below, that the imposition of lesser sanctions may effectuate the goals of Rule 37. Accordingly, the Court **DENIES** defendant's request to impose the sanction of dismissal.

### b. Preclusion of Evidence Relating to Plaintiff's Back Injury

As an alternative to dismissal, defendant requests that the Court preclude all evidence of plaintiff's back injury. Based on the Court's review of the relevant factors below, the Court finds that the sanction of preclusion is also not warranted on the current record.

The sanction of preclusion is also an "extreme" remedy to "be deployed only in rare situations." Cine Forty, 602 F.2d at 1064. "Before granting the extreme sanction of preclusion, the Court should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic

responses." <u>Ritchie Risk</u>, 280 F.R.D. at 157 (quoting <u>Outley v.</u>
<u>New York</u>, 837 F.2d 587, 591 (2d Cir. 1988)) (internal quotation
marks omitted). Similar to the factors a court should consider
when determining whether dismissal is an appropriate sanction,
courts of the Second Circuit consider the following when
assessing whether to preclude evidence or testimony: "(1) the
party's explanation for the failure to comply with the discovery
requirement; (2) the importance of the precluded evidence; (3)
the prejudice suffered by the opposing party as a result of
having to prepare to meet the new testimony; and (4) the
possibility of a continuance." <u>Ritchie Risk</u>, 280 F.R.D. at 157
(quoting <u>Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.</u>, 118
F.3d 955, 961 (2d Cir. 1997)).

The Court has previously addressed two of these factors,
each of which weighs in favor of precluding evidence relating to
plaintiff's back injury. First, plaintiff's explanation is
lacking as it essentially seeks to shift blame to her prior
counsel. As noted above, this argument is without merit as
plaintiff is bound by her prior counsel's actions, as well as
inaction. <u>See, e.g.</u>, <u>McMunn</u>, 191 F. Supp. 2d at 452. Second,
defendant has been prejudiced by having to prepare to meet the
new evidence at the eleventh hour. Defendant has further been
denied the opportunity to conduct discovery on this issue,
including deposing plaintiff and/or her prior physicians as to

this evidence.[19] The expert witnesses retained in this matter have also been deprived the opportunity to consider this evidence in formulating their opinions.[20] Accordingly, the Court finds these two factors to weigh in favor of precluding evidence of plaintiff's back injury.

Weighing against preclusion is that the Court is willing to entertain a request by defendant for a brief continuance of this matter. As discussed during the July 22, 2016, telephonic status conference, in the event that Dr. Skolnick is unable to complete the addendum before the scheduled trial dates of August 9 and 10, 2016, and/or defendant is unable to coordinate the deposition of Dr. Grauer before this time, the Court will hold the dates of September 1 and 2, 2016, for the bench trial in this matter, should a continuance be necessary. See Doc. #123 at 2-3 n. 1. Nevertheless, the Court will not consider a

---

[19] Nevertheless, the Court again notes that defendant has produced no evidence of any written discovery efforts regarding this matter. The Court would have been more inclined to impose harsher sanctions had defendant propounded an interrogatory or request for production related to any prior injuries or lawsuits.

[20] Some of this prejudice has been mitigated by the granting of defendant's requests to depose Dr. Grauer, and to permit its expert to provide an addendum to his report. See Doc. ##122, 123, discussed supra at note 16. See, e.g., Equant Integrations Servs., Inc. v. United Rentals (N. Am.), Inc., 217 F.R.D. 113, 118 (D. Conn. 2003) (defendant had opportunity to cure prejudice caused by late-disclosed expert where expert discovery deadline had been postponed and therefore, plaintiff had an opportunity to depose defendant's expert witness).

significant continuance of this matter. This case has been
pending for nearly four years and trial has already been
continued once at the request of the plaintiff. Discovery has
long closed, and the dispositive motions deadline has passed.
Accordingly, under the present circumstances, there only
presents the possibility of a brief continuance.

Also weighing against preclusion is the fact that plaintiff
will essentially be foreclosed from proving her damages if all
evidence of her back injury is precluded from trial. This
evidence is crucial to plaintiff's case, and foreclosing its
introduction may prove fatal to plaintiff's claims. Precluding
such evidence is directly contrary to "the well established
preference for resolving cases on their merits[.]" Fappiano v.
MacBeth, No. 3:09CV00043(CSH), 2010 WL 1839946, at *2 (D. Conn.
May 7, 2010); see also New York v. Green, 420 F.3d 99, 104 (2d
Cir. 2005) (noting the Second Circuit has "expressed a strong
'preference for resolving disputes on the merits[]'" versus
entering default judgments (quoting Powerserve Int'l, Inc. v.
Lavi, 239 F.3d 508, 514 (2d Cir. 2001))).

The Court further considers the "actual difficulties" the
violation causes. See Ritchie Risk, 280 F.R.D. at 157. Granted,
the failure to disclose plaintiff's prior injuries has to this
date precluded defendant from further inquiring into the same.
However, this newly revealed evidence does not harm defendant's

case, but in fact helps it. Not only does this evidence go to
the credibility of plaintiff and Dr. Grauer, but it also
substantially affects the merits of plaintiff's claims.
Additionally, as noted above, defendant has now been provided an
opportunity for Dr. Sklonick to provide an addendum to his
expert report, and to depose Dr. Grauer concerning this new
information. Accordingly, the actual difficulties encountered by
this evidence are not extreme. Therefore, the Court will not
preclude evidence of plaintiff's back injury.[21]

Plaintiff, however, will not go unsanctioned. The
disclosure failures in this matter have been long lasting and
have potentially altered the course of this litigation. The
Court is particularly perturbed by the fact that the disclosed
doctors in this matter formulated opinions without the benefit
of plaintiff's prior injuries, greatly undermining the value of
their reports and/or anticipated testimony. Defendant will now
have to bear the costs of its expert preparing an addendum to
his initial report, as well as a deposition of Dr. Grauer.
Accordingly, for the reasons stated throughout this ruling, the
Court finds that monetary sanctions in the amount paid to

---

[21] The Court has further permitted defendant to amend its Joint
Trial Memorandum, as amended [Doc. #113], to include exhibits
relating to plaintiff's prior lawsuit, and the 1992 and 2001 car
accidents and related injuries. See Doc. #123 at 4.

defendant's medical expert for preparing the addendum to his report are warranted.

On or before August 17, 2016, defendant shall file a notice with the Court which provides proof of payment to Dr. Matthew Skolnick for the preparation of the addendum. On or before August 24, 2016, plaintiff shall file, with a motion to seal if necessary, an affidavit attesting to her ability to pay the sanctions ordered. The Court will then determine whether the ordered sanction is within the plaintiff's financial means, and determine the final sanction. See Oliveri v. Thompson, 803 F.2d 1265, 1281 (2d Cir. 1986) ("[G]iven the underlying purpose of sanctions - to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations - it lies well within the district court's discretion to temper the amount to be awarded against an offending [party] by a balancing consideration of his ability to pay." (collecting cases)); Lopa v. Fireman's Fund Ins. Co., No. 11CV2973(SJ)(VMS), 2014 WL 2041822, at *4 (E.D.N.Y. May 16, 2014) ("The purpose of such a sanction was not to broadly shift Defendant's attorneys' fees to Plaintiffs, but to fashion an appropriately narrow sanction that would promote Plaintiffs' compliance; to calculate the sanction, in part, based on the burden Plaintiffs had unfairly created for Defendant; and to keep the sanction within the Plaintiffs' financial means.").

38

**III. Conclusion**

Accordingly, for the reasons articulated above, the Court **GRANTS, in part, and DENIES, in part**, defendants' Motions for Sanctions. [**Doc. #94**].

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge on January 15, 2016, with appeal to the Court of Appeals. [Doc. #50].

SO ORDERED in New Haven, Connecticut, this 27th day of July, 2016.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE