```
                               UNITED STATES DISTRICT COURT
                                 DISTRICT OF CONNECTICUT

------------------------------x
                              :
ANITRA KNOX                   :   Civ. No. 3:12CV01741(SALM)
                              :
v.                            :
                              :
UNITED STATES                 :   September 9, 2016
                              :
------------------------------x
```

**MEMORANDUM OF DECISION**

Pro se plaintiff Anitra Knox ("plaintiff") brings this single-count personal injury action against defendant United States ("defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671, et seq. Plaintiff alleges that she slipped and fell at the West Haven Veteran's Administration Hospital ("WHVA"), and as a result, sustained personal injuries. Plaintiff seeks monetary damages. A bench trial was held on September 1, 2016.

At the close of plaintiff's evidence, defendant made an oral motion to dismiss. The Court construed this motion as one for judgment on partial findings under Federal Rule of Civil Procedure 52(c)[1], "which allows the court to enter judgment as a matter of law in the moving party's favor at any point in the proceedings when the non-moving party has been fully heard on an

---

[1] Counsel for defendant represented to the Court at the final pretrial conference that he might bring a motion pursuant to Rule 52 at the close of plaintiff's evidence.

1

issue during a non-jury trial and the court finds against the party." Fabricated Wall Sys., Inc. v. Herman Miller, Inc., No. 3:08CV01313(SRU), 2011 WL 5374130, at *1 (D. Conn. Nov. 8, 2011) (citing Fed. R. Civ. P. 52(c); AmBase Corp. v. SDG Inc., No. 3:00CV1694(DJS), 2005 WL 1860260, at *2 (D. Conn. Aug. 3, 2005)). "A Rule 52(c) motion made by a defendant may be granted where the plaintiff has failed to make out a prima facie case or where the plaintiff has made out a prima facie case but the court determines that a preponderance of the evidence goes against the plaintiff's claim." Fabricated Wall Sys., 2011 WL 5374130, at *1 (citation and internal quotations omitted).

"The court's task on such a motion is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies ... Rule 52(c) implies the same inquiry the court makes to resolve all of the legal and factual matters under Rule 52(a)." Id. (citation omitted); see also LaMarca v. United States, 31 F. Supp. 2d 110, 123-24 (E.D.N.Y. 1998) (On a Rule 52(c) motion: "The court does not evaluate the evidence under the standards governing a directed verdict. It does not draw any special inferences in the non-movant's favor, or consider the evidence in the light most favorable to the non-moving party. Instead the court acts as both judge and jury, weighing the evidence, resolving any conflicts, and deciding where the preponderance lies." (citation omitted)).

Plaintiff presented only her testimony. The entirety of defendants' exhibits, marked 12 through 28, were entered into evidence by agreement of the parties. [Doc. ##154, 155]. Plaintiff's Exhibit 10, the deposition of her treating doctor, Dr. Jonathan Grauer, was also entered into evidence by agreement of the parties. [Doc. #154]. After considering plaintiff's testimony, as well as the documentary evidence, the Court granted defendant's oral motion for judgment on partial findings [Doc. ##152, 153], finding that plaintiff had failed to prove all elements of her claim; specifically that she failed to provide any evidence that defendant had notice of an alleged defect which resulted in her slip and fall. In support of this Ruling, the following constitutes the Court's findings of fact and conclusions of law pursuant to Rules 52(a) and (c) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Based on the entire record developed during trial, including the credible testimony and the admitted exhibits, the Court finds the following facts established.

At approximately 9:00PM on February 1, 2012, plaintiff, who was on her way to visit her father in the hospital, slipped and fell in the hallway of the WHVA. See Def. Ex. 24; see also Doc.

#139 at 11 (stipulation of fact).[2] Although plaintiff offered no testimony on this point, her complaint alleges that she slipped and fell as a result of a highly waxed floor. See Doc. #1, Complaint at ¶8 ("The area upon which the plaintiff, ANITRA KNOX, fell was in a dangerous and defective condition likely to cause harm to persons lawfully walking thereupon, such as the plaintiff, as it was highly waxed hallway floor that was a slick and slippery surface and that was inherently dangerous and slippery that had been present for some time." (sic)). The documentary evidence also suggests that plaintiff contends that she slipped as the result of a highly waxed floor. See Def. Ex. 21 (Standard Form ("SF") 95 alleging plaintiff fell due to "heavily waxed floors"); Def. Ex. 13 at 13-03 (medical record dated February 2, 2012, stating plaintiff: "suffered a fall at the VA Hospital in West Haven last night. She notes that the floors were especially waxed and this is what caused her to fall.").

Surveillance video of the slip and fall shows plaintiff falling forward and landing on her right knee and forearm. See Def. Exs. 23, 23B; see also Def. Ex. 12 at 12-01; Def. Ex. 15 at

---

[2] Although the controlling version of the Trial Memorandum was filed by defendant, plaintiff later indicated that she had no objection to this version. See Doc. #144 at 2. Accordingly, the Court deemed the Trial Memorandum filed by defendant at docket entry 139 as a Joint Trial Memorandum for purposes of the bench trial. See id.

15-01. Plaintiff can then be seen on her hands and knees trying to gather herself, before sitting on the ground and rubbing her right knee. See Def. Ex. 23. WHVA security officers are then seen responding to the fall and offering plaintiff a wheelchair, which plaintiff refused. See id.; see also Def. Ex. 24 at 24-01. The video next shows plaintiff ambulating on her own, eventually travelling out of the surveillance camera's view. See Def. Ex. 23.

Plaintiff initially refused medical treatment after her fall. See Def. Ex. 24 at 24-02. However, later that evening, plaintiff presented to the WHVA emergency department with complaints of right arm, knee and lower back pain. See id.; see also Def. Ex. 12. Plaintiff was discharged in stable condition "with minor soft tissue trauma." Def. Ex. 12 at 12-02. An x-ray taken that night, the results of which became available the next day, revealed that plaintiff suffered an elbow injury, specifically, an impacted right radial head fracture. See id. at 12-04.

Plaintiff focused her testimony on the treatment she received for her injuries, which is largely supported by the documentary evidence. She also testified about her activities of daily living both before and after the fall, generally stating that she is no longer able to perform many of her prior activities since the fall. Plaintiff testified that she

5

continues to suffer pain and other symptoms as a result of the February 1, 2012, slip and fall.

## CONCLUSIONS OF LAW

### I. Federal Tort Claims Act

Plaintiff brings this negligence action pursuant to the FTCA. See Doc. #1, Complaint. Under certain circumstances, the FTCA provides for a limited waiver of the government's sovereign immunity where a government employee commits a tort "within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1). "Thus, for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred, ... and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action[.]" Chen v. United States, 854 F.2d 622, 626 (2d Cir. 1988) (internal citation omitted); see also Davis v. United States, 430 F. Supp. 2d 67, 73 (D. Conn. 2006) ("Under the FTCA the government's liability is determined by the application of the law of the place where the act or omission occurred." (citing 28 U.S.C. §1346(b)). Here, because plaintiff's accident occurred in Connecticut, and as stipulated to by the parties, Connecticut

premises liability law applies to the merits of this case. See Doc. #139 at 11.

In a civil case such as this, "the plaintiff bears the burden of proving the elements of [her] claim by a preponderance of the evidence[,]" meaning "the fact is more likely true than not true." Watson v. United States, No. 14CV6459, 2016 WL 748489, at *13 (E.D.N.Y. Feb. 25, 2016) (citation omitted).

## II. Negligence and Premises Liability under Connecticut Law

### A. Elements, Generally

Plaintiff's premises liability claim sounds in negligence. See Maffucci v. Royal Park Ltd. P'ship, 707 A.2d 15, 20-21 (Conn. 1998). Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." Id. at 24 (quoting RK Constructors, Inc. v. Fusco Corp., 650 A.2d 153, 155 (Conn. 1994)). "The existence of a duty is a question of law. ... Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." Gordon v. Bridgeport Hous. Auth., 544 A.2d 1185, 1191 (Conn. 1988) (collecting cases) (internal citations omitted).

"In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee."

Considine v. City of Waterbury, 905 A.2d 70, 89 (Conn. 2006) (quoting Morin v. Bell Court Condo. Ass'n, Inc., 612 A.2d 1197, 1199 (Conn. 1992)). Here, it is undisputed that plaintiff, as a visitor of the WHVA, was a business invitee. See Diaz v. Manchester Mem'l Hosp., 130 A.3d 868, 871 (Conn. App. Ct. 2015) ("It is undisputed that the plaintiff [a hospital visitor] was a business invitee[.]" (citation omitted) (alteration added)); see also Hellamns v. Yale-New Haven Hosp., Inc., 82 A.3d 677, 680 (Conn. App. Ct. 2013)(finding that "[i]t is undisputed that plaintiff [a hospital patient], was a business invitee[]" of the hospital (alteration added)).

"A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. ... In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." Considine, 905 A.2d at 89 (quoting Morin, 612 A.2d at 1199). Accordingly, for defendant to be found liable for plaintiff's injuries, "plaintiff must prove (1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had 'existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it.'" Martin v. Stop & Shop Supermarket Cos., Inc., 796 A.2d 1277, 1278 (Conn. App. Ct.

8

2002) (quoting Cruz v. Drezek, 397 A.2d 1335, 1339 (Conn. 1978)).

### B. Existence of a Defect

The Court turns first to whether plaintiff has proved the existence of a defect. In response to defendant's Rule 52 motion, plaintiff argued that the presence of a wet rug contributed to her fall. She did not, however, present any testimony on this theory. Nevertheless, in support of this argument, plaintiff relies on Defendant's Exhibit 23, which is the surveillance video of her accident. The surveillance video, however, does not show the presence of a rug. Additionally, the weight of the evidence does not support plaintiff's argument that the presence of a wet rug contributed to her fall. See Def. Ex. 21 (SF 95 alleging she fell due to "heavily waxed floors"); Def. Ex. 13 at 13-03 (medical record dated February 2, 2012, stating plaintiff: "suffered a fall at the VA Hospital in West Haven last night. She notes that the floors were especially waxed and this is what caused her to fall"). Additionally, statements taken from plaintiff at the time of the incident make no reference to a wet rug, but rather state that she "slipped on a scuff-mark on the floor." See Def. Ex. 24 at 24-02. Photographs and surveillance footage reveal that the scuff mark was caused by plaintiff's high heel as she fell. See Def. Exs. 23, 23A, 23B. WHVA police who responded to plaintiff's fall

observed that the area on which plaintiff slipped was "dry." Def. Ex. 24 at 24-02. Accordingly, the Court finds that the preponderance of the evidence does not support plaintiff's argument that she slipped as a result of stepping off of a wet rug onto an allegedly highly waxed floor.

As to whether the presence of a highly waxed floor constitutes a per se defective condition, an argument could be made that the fact that plaintiff slipped supports an inference of an inherently defective or dangerous condition. See, e.g., Gray v. Fitzgerald & Platt, Inc., 127 A.2d 76, 78 (Conn. 1956) ("Upon the evidence that the floor was so slippery that the plaintiff's son could slide upon it, the jury were entitled to infer that the defendant had failed to use reasonable care to keep its premises reasonably safe for its business visitors."). However, under the circumstances now under consideration, it is not clear whether the presence of a highly waxed floor alone necessarily implies a defect. For example, the Connecticut Supreme Court has held: "An owner in treating a floor may use wax or oil or other substance in the customary manner without incurring liablity to one who slips and falls thereon, unless the owner is negligent in the materials he uses or in the manner of applying them." Smith v. Union & New Haven Trust Co., 185 A. 81, 82 (Conn. 1936) (sic) (collecting cases); see also Jordan v. Realogy Franchise Grp., LLC, No. CV116008264, 2013 WL 2278755,

10

at *4 (Conn. Super. Ct. Apr. 25, 2013) (same); Nussbaum v. Metro-N. Commuter R.R., 603 F. App'x 10, 11-12 (2d Cir. 2015) ("When a plaintiff seeks to establish a defendant's slip-and-fall liability by showing that the defendant created a dangerous condition, the application of wax, polish, or paint to a floor in a nonnegligent manner will not, standing alone, support a negligence cause of action for making the floor slippery." (applying New York law) (citation and internal quotation marks omitted)). Plaintiff has presented no evidence that defendant was negligent in the materials used on the floor, or in the manner in which they were applied. Nevertheless, the Court need not reach the issue of whether the allegedly highly waxed floor at the WHVA constituted a defective condition, in light of the complete absence of any evidence that defendant had notice of this alleged defect.

### C. Notice

"[R]elevant case law in Connecticut places a heavy burden on a 'slip and fall' plaintiff to demonstrate that a defendant had actual or constructive notice of the specific defect that led to the accident and 'not merely of conditions naturally productive of that defect even though subsequently in fact producing it.'" Graham v. Kohl's Dep't Stores, Inc., No. 3:04CV949(MRK), 2005 WL 2256603, at *1 (D. Conn. Sept. 8, 2005) (quoting LaFaive v. DiLoreto, 476 A.2d 626, 629 (Conn. App. Ct.

11

1984)); see also Kelly v. Stop & Shop, Inc., 918 A.2d 249, 255 (Conn. 2007) ("Typically, [f]or [a] plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is] incumbent upon [him] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it. ... [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it[.]" (quoting Baptiste v. Better Val-U Supermarket, Inc., 811 A.2d 687 (Conn. 2002))). "Thus, for [plaintiff] to recover for the breach of a duty owed to her as a business invitee, she must prove that [defendant] had either actual or constructive notice of the particular defect that caused her injuries." Navarro v. Kohl's Dep't Stores, Inc., No. 3:05CV00843(DJS), 2007 WL 735787, at *3 (D. Conn. Mar. 8, 2007) (alterations added).

### *i. Actual notice*

"A plaintiff can demonstrate that a defendant had actual notice of an unsafe condition by, for example, demonstrating that the condition was created by the defendant's employee[.]" Hellamns, 82 A.3d at 682 (citing Zarembski v. Three Lakes Park, Inc., 419 A.2d 339, 341 (Conn. 1979)). Even assuming there was a defective condition, plaintiff presented absolutely no evidence

12

at trial that defendant had actual notice of the alleged highly waxed floor. Plaintiff provided no specifics of her accident during her testimony. Plaintiff presented no testimony of any WHVA employee, nor does the record contain any maintenance reports or other evidence that could support a finding that one of defendant's employees created the allegedly defective condition. There was also no evidence presented that another visitor to, or patient of, the WHVA warned defendant about the alleged condition on February 1, 2012. Surveillance video of the area where plaintiff slipped also shows other persons walking in that area without issue. See Def. Ex. 23.

Alternatively, a plaintiff can prove actual notice "by presenting evidence that an employee, operating within the scope of his authority, observed the dangerous condition and either was charged with maintaining the area or was charged with a duty to report the unsafe condition." Hellamns, 82 A.3d at 682 (citing Derby v. Conn. Light & Power Co., 355 A.2d 244, 246-47 (Conn. 1974)). As detailed above, plaintiff presented no evidence that would satisfy this theory of actual notice.

Therefore, the Court finds that plaintiff failed to sustain her burden of proof that defendant had actual notice of the alleged defect -- a highly waxed floor -- given the complete absence of evidence "that [defendant's] employees actually knew of the [defect], or that [defendant's] employees themselves

13

[created the defect.]" Navarro, 2007 WL 735787, at *4 (alterations added); see also Gomes v. United States, No. 3:11CV01825(VLB), 2012 WL 5869801, at *6 (D. Conn. Nov. 19, 2012) ("Absent evidence that the Norwich Post Office had actual notice of the wet leaves on the exterior steps, Plaintiff may not establish actual notice." (collecting cases) (footnote omitted)).

Accordingly, the Court next turns to whether plaintiff has shown, by a preponderance of the evidence, that defendant had constructive notice of the alleged defective condition.

### *ii. Constructive Notice*

"The controlling question in deciding whether the defendant[] had constructive notice of the defective condition is whether the condition existed for such a length of time that the defendant[] should, in the exercise of reasonable care, have discovered it in time to remedy it." Considine, 905 A.2d at 95-96 (quoting Cruz, 397 A.2d at 1335) (alterations added).

> What constitutes a reasonable length of time within which the defendant should have learned of the defect, how that knowledge should have been acquired, and the time within which, thereafter, the defect should have been remedied are matters to be determined in light of the particular circumstances of each case. The nature of the business and the location of the defective condition would be factors in this determination.

Pollack v. Gampel, 313 A.2d 73, 78 (Conn. 1972). "Constructive notice is triggered by a general duty of inspection or, when the

dangerous condition is not apparent to the human eye, some other factor that would alert a reasonable person to the hazard." Olsen v. Norwalk Hosp. Ass'n, No. FSTCV136019793S, 2016 WL 3536524, at *3 (Conn. Super. Ct. June 3, 2016) (quoting DiPietro v. Farmington Sports Arena, LLC, 49 A.3d 951, 957 (Conn. 2012)).

"To establish constructive notice, plaintiff must adduce some evidence, either direct or circumstantial, that establishes the length of time the defect was present. The finder of fact is then left to determine whether the length of time is sufficient enough so as to expect that the defendant should have encountered it." Navarro, 2007 WL 735787, at *4 (citing Gulycz v. Stop and Shop Cos., Inc., 615 A.2d 1087, 1088 (Conn. App. Ct. 1992)).

There is no evidence that establishes the length of time the alleged defect was present. The only evidence, if any, that a defect existed prior to plaintiff's fall, was that she in fact slipped and fell. See Navarro, 2007 WL 735787, at *5. This, however, is far too tenuous to support a finding of constructive notice without any other evidence as to how long the alleged defective condition existed prior to plaintiff's fall. See id. Indeed,

> [a]lthough circumstantial evidence can establish constructive notice; Sokolowski v. Medi Mart, Inc., 24 Conn. App. 276, 287, 587 A.2d 1056 (1991); no such circumstantial evidence exists here. The plaintiff offered no evidence, direct or circumstantial, to show

15

> that the defect had existed for any period of time so as to enable the court to exercise its function as factfinder. Nor was the court able to infer that the defect had existed for any length of time, since there was no evidence to establish a basis for such an inference. "An inference must have some definite basis in the facts"; Boehm v. Kish, 201 Conn. 385, 389, 517 A.2d 624 (1986); and the conclusion based on it must not be the result of speculation and conjecture. Palmieri v. Macero, 146 Conn. 705, 708, 155 A.2d 750 (1959).

Gulycz, 615 A.2d at 1089. Therefore, the Court finds that plaintiff failed to sustain her burden of proof that defendant had constructive notice of the alleged defect -- a highly waxed floor -- which resulted in her slip and fall on February 1, 2012.[3]

## CONCLUSION

Accordingly, because plaintiff has failed to prove an essential element of her FTCA claim, namely that defendant had notice of the alleged defective condition resulting in her fall, the Court finds in favor of defendant. Therefore, the Clerk of the Court is directed to enter judgment in favor of defendant.

---

[3] Following argument on defendant's motion for judgment on partial findings, the Court took a thirty minute recess to provide plaintiff with an opportunity to review the evidence admitted during trial to locate any exhibits which would satisfy the elements of defect and notice. Following this break, plaintiff proffered a document, which was not in evidence, as proof of defendant's constructive notice of the defect. The Court explained to plaintiff that because this document was not in evidence, and indeed had never been listed as an exhibit or otherwise disclosed to defendant, it could not consider the document in ruling on the defendant's motion. Following this discussion, held on the record, plaintiff proceeded with her response to the defendant's argument, and conceded that the evidence at trial did not establish the element of notice.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge on January 15, 2016 [Doc. #50], with any appeal to be made directly to the Court of Appeals. <u>See</u> Fed. R. C. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut, this 9th day of September, 2016.

                                    /s/
                            HON. SARAH A. L. MERRIAM
                            UNITED STATES MAGISTRATE JUDGE